ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
CALENDAR: W
PAGE 1 of 11
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

**KOMATSU AMERICA CORP.**

     **Plaintiff,**

    **v.**                           **Case No.:**

**ACE PROPERTY AND CASUALTY
INSURANCE COMPANY**

     **Defendant.**

## COMPLAINT

Plaintiff, KOMATSU AMERICA CORP. ("KOMATSU"), brings this Complaint against

defendant, ACE PROPERTY AND CASUALTY INSURANCE COMPANY ("ACE"), for

breach of an insurance contract and bad faith failure to settle a claim. This case involves the

potential disclosure of confidential information including information that is subject to the

attorney-client privilege and attorney work-product rule. It also involves confidential and

sensitive case risk assessments and is subject to a confidentiality agreement. Plaintiff has

removed this sensitive and confidential information from this copy of the Complaint, but is

prepared to disclose this information once an appropriate protective order is entered in this case.

In support of this Complaint, KOMATSU alleges as follows:

<ins>GIST OF THE ACTION</ins>

1.     KOMATSU, one of the world's largest manufacturers of earth moving equipment,

was sued in an action for product liability.  KOMATSU timely notified its insurers of the claim

and tendered the claim to its insurers.  Tokio Marine was KOMATSU's primary insurer and

ACE was KOMATSU's excess insurer under Commercial Umbrella Liability Policy No. XOO

EXHIBIT 2

G23889353 ("Policy"). Both Tokio Marine and ACE accepted the tender and agreed to provide a defense and to indemnify in the event of a judgment.

2.　　Plaintiff in the underlying case sought damages for injuries he suffered, which permanently disabled him. He also sought punitive damages. Tokio Marine hired "Underlying Counsel" to represent KOMATSU.

3.　　One month before the trial date, the parties participated in a mediation during which the mediator assessed the potential gross loss to KOMATSU. More importantly, as a result of statements made at the mediation, KOMATSU's Underlying Counsel provided his own assessment of the risk to KOMATSU in the underlying litigation. As a result of the mediator's and his own assessment, Underlying Counsel requested authority to settle up to a specified level in total from Tokio Marine and ACE. Tokio Marine authorized Underlying Counsel to offer its full limit, but ACE initially refused to offer anything.

4.　　Three weeks before trial and over three years after having been notified of the suit, ACE's representative wrote KOMATSU stating, for the first time, that (i) it was bringing in additional counsel ("Assigned-In Counsel") to represent KOMATSU because of the new case evaluation after the mediation, (ii) punitive damages were not insurable and ACE was reserving its rights on punitive damages, and (iii) "Komatsu [should] consider [hiring] independent counsel to assess this [punitive damage] exposure and consider whether it wishes to contribute some amount toward settlement in reliance on Underlying Counsel's assessments that some sum of punitive damages may be awarded."

5.　　The case was set to start trial three weeks after ACE notified KOMATSU that it was bringing in Assigned-In-Counsel. While preparing for trial, Underlying Counsel continued to negotiate with Plaintiff's counsel to settle, but needed greater contribution from ACE.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 2 of 11

Underlying Counsel made additional requests to ACE, but ACE stonewalled. Indeed, it was not until six days before trial that ACE offered to contribute any of its limits to settlement and then only a small amount.

6.       The Friday before the Monday start of trial was critical because the Court informed the parties that it would be ruling on multiple motions *in limine* that could significantly affect the value of the case. Consequently, Underlying Counsel contacted the mediator for assistance. As a result, the mediator agreed to make a mediator's recommendation. If both sides accepted the recommendation, then there would be a binding settlement. If either side rejected the recommendation, then there would be no settlement and the case would proceed to trial on the upcoming Monday.

7.       Within a few hours of receiving the recommendation, Underlying Counsel and KOMATSU evaluated the recommendation, agreed that it was a reasonable settlement. However, the settlement recommendation would require ACE to contribute more than ACE had previously offered. Therefore, KOMATSU contacted ACE and requested additional contribution from ACE. Knowing that the court would soon be ruling on the motions *in limine*, KOMATSU requested that a call be scheduled with ACE and Underlying Counsel no later than 4:00 PM CST that day to confirm that ACE would contribute the additional amount to close the gap. At 3:45 PM CST Assigned-In Counsel sent an email to KOMATSU and Underlying Counsel attaching a case evaluation and stating that "We cannot do the proposed call at 4pm CST today . . . ."

8.       Shortly before 5:00 CST, the Court ruled on the motions *in limine* and Underlying Counsel communicated to Assigned-In Counsel that KOMATSU lost the motions.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 3 of 11

9.    At this point, Underlying Counsel had advised KOMATSU as to the reasonableness of the settlement and the impact of the lost motions *in limine* on the value of the case.

10.    KOMATSU tried to get set up a conference call with ACE to discuss the impact of the rulings on these motions and to get an agreement from ACE to contribute an additional sum to close the gap between the mediator's recommendation and the primary and excess insurer's contributions to date, but ACE's representatives refused to make themselves directly available to discuss with KOMATSU the settlement amount.

11.    ACE forced KOMATSU into having to make a difficult decision: either contribute its own funds toward settlement, thereby bridging the gap between its insurers' offer and the mediator's recommendation, or expose itself to a potential judgment many times greater. More importantly, KOMATSU faced a reasonable probability of punitive damages assessed against it. As a result, KOMATSU's own assets were exposed because ACE contended that its insurance did not cover punitive damages. Through its intransigence and unreasonable settlement position, ACE used the prospect of punitive damages against KOMATSU as leverage to force KOMATSU to contribute its own funds toward the settlement in order to avoid trial even though the settlement amount was reasonable (in that it was under the estimated likely compensatory judgment award) and within ACE's limits. ACE breached its insuring agreement and acted in bad faith in rejecting a reasonable settlement, thereby exposing its insured to significant punitive damages.

<u>THE PARTIES</u>

12.    KOMATSU AMERICA CORP. is a U.S. subsidiary of Komatsu Ltd., the world's second largest manufacturer and supplier of earth-moving equipment, consisting of construction,

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 4 of 11

4

mining and compact construction equipment. KOMATSU's principal place of business is in Rolling Meadows, Cook County, Illinois.

13.     ACE PROPERTY AND CASUALTY INSURANCE COMPANY is part of the ACE Group, which is a global provider of commercial property and casualty insurance. ACE's corporate office is in Philadelphia, Pennsylvania. ACE is authorized to do business, and does business in Illinois.

JURISDICTION AND VENUE

14.     The Court has jurisdiction over ACE pursuant to 735 *ILCS* §5/2-209 in that this case is based, in part, on breach of contract and the insurance contract at issue (the "Policy") was issued to KOMATSU in Illinois and insures risks located in Illinois. Also, ACE conducts business in Illinois.

15.     Venue is proper in Cook County pursuant to 735 *ILCS* §§5/2-101 and 102, in that the contract at issue was entered into in Cook County, Illinois, and ACE does business in Cook County, Illinois.

FACTS COMMON TO ALL COUNTS

**The Insurance Contract**

16.     On or about January 8, 2008, ACE issued to KOMATSU Commercial Umbrella Liability Policy No. XOO G23889353. (Ex. 1, the Policy.)

17.     The Policy provided excess coverage to KOMATSU.

18.     The Policy further provided that "We will pay on behalf of the 'insured' those sums in excess of the 'retained limit' that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies." (Ex. 1, Insuring Agreement, §I.A.)

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 5 of 11

5

19.     The Policy also provided that ACE would have the duty to defend KOMATSU when "damages sought would be covered by the 'underlying insurance' but are not covered by that insurance because of the exhaustion of the applicable limits of the 'underlying insurance' . . . ." (Ex. 1, Defense and Supplementary Payments, §III.A.)

20.     Additionally the policy provided that ACE "will have the right but not the duty to associate in the investigation of any claim and the defense of any 'suit' which may, in our opinion, result in damages to which this insurance applies." (Ex. 1, Defense and Supplementary Payments, §III.C.)

21.     ACE's position is that the Policy does not cover punitive damages, and ACE reserved its rights with respect to any award of punitive damages.

**The Underlying Case**

22.     KOMATSU was sued in an Underlying Case for injury allegedly caused by a KOMATSU machine.

23.     Upon receipt of the claim, KOMATSU timely and properly tendered the claim to both Tokio Marine, the primary carrier, and ACE.

24.     Both insurers accepted the tender. Tokio Marine provided a defense and ACE monitored the case.

25.     After years of discovery and litigation, the case was set for trial.

26.     Plaintiff was seeking damages above the primary limits and into ACE's coverage.

**The Mediation**

27.     One month before the trial date, the parties mediated the dispute. ACE was advised of and had the right to participate in the mediation. At the time of the mediation, ACE's

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 6 of 11

position was that the case should settle within the underlying policy limits, and ACE did not offer any amount to settle the claim and did not meaningfully participate in the mediation.

28.     At the mediation, the mediator assessed that a potential verdict above the primary limits and into ACE's coverage layer was likely.

29.     Immediately after the mediation, KOMATSU's Underlying Counsel, prepared a revised case evaluation based on information learned at the mediation, comments by the mediator and his own analysis and evaluation.

30.     Based on the mediator's estimate of a likely verdict and Underlying Counsel's own assessment of a likely verdict, Underlying Counsel requested settlement authority from both insurers.

**ACE Undermined Settlement**

31.     As the parties prepared for trial, negotiations continued, but ACE undermined the settlement process in three ways: (i) it ignored Underlying Counsel's assessment of the value of the case; (ii) instead, it hired new Assigned-In Counsel, purportedly for KOMATSU, to evaluate the case, and then improperly relied on that counsel's report by emphasizing incomplete factual assertions and assumptions; and (iii) it made itself unavailable during a critical period of the negotiation.

32.     ACE continued to refuse to contribute anything despite numerous requests from KOMATSU and Underlying Counsel. In each of these communications, and without any rational explanation, ACE refused to acknowledge that the case was worth more than the primary insurer's limits or accept Underlying Counsel's recommendations. Instead it sought to discredit Underlying Counsel's valuation of the case.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 7 of 11

33.     During negotiations with plaintiff's counsel following the mediation and the Underlying Counsel's updated analysis, Tokio Marine gave authority to Underlying Counsel to offer its limits.

34.     On the Friday before Monday's start of trial, Assigned-In Counsel, who had been on the case for about two weeks, issued her own case evaluation to KOMATSU's General Counsel, which disagreed with Underlying Counsel's assessment.

35.     Although ACE hired Assigned-In Counsel to assist and represent KOMATSU, it appears that ACE did so in order to benefit it and to disadvantage its insured. ACE had Assigned-In Counsel prepare an evaluation, from which ACE selected facts that it believed supported its valuation of the case, and ignored facts that supported KOMATSU's. For example,

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 8 of 11

       a.  Neither ACE nor Assigned-In Counsel's evaluation accounted for losing critical pre-trial motions;

       b.  ACE and Assigned-In Counsel based their fair value on an overly narrow selection of jury verdicts.

These and other flaws in Assigned-In Counsel's evaluation again bring into question ACE's good faith in retaining Assigned-In Counsel to represent KOMATSU.

36.     Moreover, ACE's and Assigned-In-Counsel failed to meaningfully participate in the settlement negotiations, especially in the final days before trial.

37.     After providing her case valuation, Assigned-In Counsel informed KOMATSU and Underlying Counsel that ACE would not be available to further discuss settlement authority on the Friday before trial, even though time was of the essence and a settlement opportunity could be lost. ACE refused to make itself available directly, despite KOMATSU's and its Underlying Counsel's requests.

38.     Faced with (i) exposure of its assets, (ii) a judge who denied virtually all of its pre-trial motions, (iii) a sympathetic Plaintiff, and (iv) an insurer (ACE) who went dark and stopped communicating, KOMATSU had to decide whether to bridge the difference between Plaintiff's demand and its insurers' contribution, or start a high-risk trial in two days.

39.     Based on these and other factors, ACE effectively forced its insured to contribute the additional sum in order to settle the case.

<u>COUNT I—BREACH OF CONTRACT AND DUTY OF GOOD FAITH AND FAIR DEALING</u>

40.     KOMATSU incorporates by reference the allegations in ¶¶ 1-39 as its allegations to this Count.

41.     KOMATSU and ACE entered into an insurance contract, herein referred to as the Policy.

42.     Under the Policy, ACE agreed to pay "those sums in excess of the 'retained limit' that the 'insured' becomes legally obligated to pay as damages . . . ."

43.     ACE also agreed to defend KOMATSU when "damages sought would be covered by the 'underlying insurance' but are not covered by that insurance because of the exhaustion of the applicable limits of the 'underlying insurance.'"

44.     The insurer's duty of good faith and fair dealing is "an extension of the duty to defend." *Swedish American Hosp. Ass'n of Rockford v. Illinois State Med. Inter-Ins. Exch.*, 395 Ill. App. 3d 80, 101, 916 N.E.2d 80, 98 (2009).

45.     ACE owed a duty of good faith and fair dealing to KOMATSU.

46.     This duty included the obligation to enter into a reasonable settlement if ACE's rejection of a reasonable settlement would expose KOMATSU "to liability exceeding the policy limits." *SwedishAmerican Hosp. Ass'n of Rockford*, 395 Ill. App. 3d 80, 916 N.E.2d at 98.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 9 of 11

47.     This duty arises "when there is a reasonable probability of recovery in excess of policy limits and there is a reasonable likelihood of a finding of liability against the insured." *SwedishAmerican Hosp. Ass'n of Rockford*, 395 Ill. App. 3d 80, 916 N.E.2d at 99.

48.     ACE had a duty to settle because there was a reasonable probability of recovery in excess of the policy limits and there was a reasonable likelihood of finding of liability against the insured.

49.     ACE breached its duty to settle by refusing to contribute the sum necessary to the settlement even though that sum was well within the Policy's limits.

50.     KOMATSU suffered harm as a result of ACE's breach because KOMATSU contributed its own assets to settle the claim.

51.     ACE's breach forced KOMATSU to step in and do what ACE should have done.

WHEREFORE, KOMATSU asks this Court to enter judgment in its favor and award it damages equal to the sum it contributed to settle the claim, plus costs and fees of this suit.

<u>COUNT II—UNREASONABLE AND VEXATIOUS REFUSAL TO SETTLE PURSUANT TO 215 *ILCS* §5/155</u>

52.     KOMATSU incorporates by reference the allegations in ¶¶ 1-51 as its allegations to this Count.

53.     ACE refused to contribute an additional sum to settle the *Moore* case.

54.     In addition, ACE refused to make itself directly available to negotiate a settlement during the critical Friday before Monday's start of trial.

55.     ACE's refusal to settle was both unreasonable and vexatious and constituted bad faith for the above reasons, among others. ACE, through its unreasonable and vexatious acts, forced on KOMATSU the choice of either contributing its own funds to settle the claim or face a verdict that could reach its own assets.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 10 of 11

WHEREFORE, KOMATSU seeks statutory damages, including attorney fees and costs, as set forth in 215 *ILCS* §5/155.

<u>JURY DEMAND</u>

KOMATSU demands trial by jury.

Dated: July 10, 2015            **Komatsu America Corp.**

By: _____
Attorney for Plaintiff

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 11 of 11

Darrell J. Graham
Matthew D. Tanner
**Roeser Bucheit & Graham LLC**
2 N. Riverside Plaza, Ste. 1420
Chicago, IL  60606
(312) 621-0301

11

FILED
7/10/2015 1:53 PM
CALENDAR: W
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN



**ACE USA**

# Declarations

# Commercial Umbrella Liability Policy

| | | |
|---|---|---|
| PRODUCER CODE<br>174200 | OFFICE<br>Chicago | PREVIOUS POLICY NUMBER<br>G23871191 |
| AUDIT FREQUENCY<br>None | PRODUCER<br>AON RISK SERVICES INC OF ILLINOIS | PAC<br>NTA |
| NAMED INSURED IS:<br>Company | BUSINESS OF INSURED<br>Construction Machinery | PIIC<br>3531 |

Policy Number: XOO G23889353

Policy Period:   From 01/01/2008   to 01/01/2009

12:01 A.M Standard Time at the Address of the Named Insured as stated herein

| NAMED INSURED AND ADDRESS | COVERAGE IS PROVIDED IN THE COMPANY DESIGNATED BELOW |
|---|---|
| Komatsu America Corp<br><br>One Continental Tower<br>1701 W. Golf Rd.<br>Rolling Meadows, IL 60008 | ACE Property And Casualty Insurance Company |

### Limits of Insurance

$ 25,000,000 Each Occurrence          $ 25,000,000 General Aggregate

$ 25,000,000 Each Occurrence          $ 25,000,000 Products Completed Operations Aggregate

Self Insured Retention $ 2,000,000

### Premium

Basis of Premium: Flat

Redacted

### Schedule of Underlying Insurance

The Schedule is described on form no.: CC1E5, which forms a part of this Policy's Declarations.

### Endorsements Attached to and forming a part of this Policy at inception:

### See attached Schedule of Endorsements

| DATE OF ISSUE<br>January 8, 2008 | SIGNATURE OF AUTHORIZED AGENT |
|---|---|

EXHIBIT 1 TO COMPLAINT

# SCHEDULE OF ENDORSEMENTS

| Named Insured | | | |
|---|---|---|---|
| **Komatsu America Corp** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

| | |
|---|---|
| XS20835 (08/06) | Commercial Umbrella Liability Policy |
| CC1K11e (02/06) | Signatures |
| CC1E15 | Claims Reporting Endorsement |
| CC1E15 | Incidental Medical Malpractice Liability Coverage Endorsement |
| CC1E15 | Professional Services Liability Limitation Endorsement – Designated Services |
| CC1E15 | Retention Maintenance Endorsement |
| TRIA11a (2/06) | Policyholder Disclosure Notice Of Terrorism Insurance Coverage |
| XS20744 (08/06) | Pollution Exclusion-Combination Exception Time Element & Named Peril |
| XS20745 (08/06) | Aircraft Products And Grounding Exclusion |
| XS20746 (08/06) | Anti-Stacking Endorsement |
| XS20754 (08/06) | Non-Concurrency Endorsement(Does not Recognize Non-Concurrency) |
| XS20771 (08/06) | Losses From Certified Acts Of Terrorism Endorsement |
| XS20779 (08/06) | Fungi Or Bacteria Exclusion |
| XS20796 (08/06) | Cross Suits Exclusion |
| XS20797 (08/06) | Designated Person Or Organization Exclusion |
| XS20807 (08/06) | Fiduciary Liability Exclusion |
| XS20809 (08/06) | Financial Institutions Exclusion |
| XS20819 (08/06) | Professional Services Liability Exclusion - Absolute |
| XS20827 (08/06) | Unimpaired Aggregate Endorsement |
| XS22088 (04/07) | Catastrophe Management Coverage Endorsement |
| ALL20887 (10/06) | ACE Producer Compensation Practices & Policies |
| XS22552 (06/07) | Catastrophe Management Policyholder Notice |
| IL P 001 (01/04) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |

ELECTRONICALLY FILED
7/30/2015 1:53 PM
2015-L-007447
CALENDAR: 5
PAGE 1 of 22

CC1E15

EXHIBIT 1 TO COMPLAINT

## SCHEDULE OF UNDERLYING INSURANCE

| Named Insured | | | |
|---|---|---|---|
| **Komatsu America Corp** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 to 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property & Casualty Insurance Company** | | | |

**GENERAL LIABILITY**

Redacted

**EMPLOYEE BENEFITS LIABILITY**

Redacted

**EMPLOYED LAWYERS PROFESSIONAL E&O**

Redacted

**KOMATSU AMERICA CORP**

Redacted

**EMPLOYERS LIABILITY (Arizona, Missouri, Oregon, Wisconsin Only)**

Redacted

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 3 of 52

CC1E15

EXHIBIT 1 TO COMPLAINT

**EMPLOYERS LIABILITY (All Other States)**

Redacted

**FOREIGN COMMERCIAL GENERAL LIABILITY**

Redacted

**FOREIGN AUTOMOBILE LIABILITY**

Redacted

**FOREIGN EMPLOYERS LIABILITY**

Redacted

**FOREIGN EMPLOYER'S BENEFIT LIABILITY**

Redacted

<u>**KOMATSU INTERNATIONAL (CANADA) INC.**</u>

**AUTOMOBILE LIABILITY (Canada Only)**

Redacted

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 4 of 52

CC1E15

EXHIBIT 1 TO COMPLAINT

## MODULAR MINING

**AUTOMOBILE LIABILITY**

Redacted

**FOREIGN GENERAL LIABILITY**

Redacted

**FOREIGN AUTOMOBILE LIABILITY**

Redacted

**FOREIGN EMPLOYERS LIABILITY**

Redacted

**FOREIGN EMPLOYER'S BENEFIT LIABILITY**

Redacted

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 5 of 52

CC1E15

EXHIBIT 1 TO COMPLAINT

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 6 of 52

### HENSLEY

**AUTOMOBILE LIABILITY (Texas Only)**

Redacted

**AUTOMOBILE LIABILITY (All Other States)**

Redacted

**AUTOMOBILE LIABILITY (Canada Only)**

Redacted

### KSA

**AUTOMOBILE LIABILITY**

Redacted

**EMPLOYERS LIABILITY**

Redacted

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

CC1E15                                                                                       Page 4 of 4

EXHIBIT 1 TO COMPLAINT



# Commercial Umbrella Liability Policy

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

## I. INSURING AGREEMENT

A. We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or personal and advertising injury" to which this insurance applies.

1. This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

   a. The "bodily injury" or "property damage" is caused by an "occurrence";

   b. The "bodily injury" or "property damage" occurs during the "policy period"; and

   c. Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

2. This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

B. "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

C. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

1. Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2. Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3. Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 7 of 52

EXHIBIT 1 TO COMPLAINT

D. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II. WHO IS AN INSURED

A. The following are "insureds":

1. The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2. Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3. If you are designated in the Declarations as:

   a. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

   c. A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

   e. A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are "insureds" for:

   a. "Bodily injury" or "personal and advertising injury":

      (1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (2) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

      (3) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

      (4) Arising out of his or her providing or failing to provide professional health care services.

   b. "Property damage" to property:

      (1) Owned, occupied or used by you,

      (2) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 8 of 52

2.  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3.  Any person or organization having proper temporary custody of your property if you die, but only:

    a.  With respect to liability arising out of the maintenance or use of that property; and

    b.  Until your legal representative has been appointed.

4.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

5.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization. However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

    b.  This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

    c.  This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

    d.  We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6.  Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**DEFENSE AND SUPPLEMENTARY PAYMENTS**

A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

    1.  When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

    2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

    3.  When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B.  We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C.  We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D.  If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

    1.  All expenses we incur.

    2.  Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy. We do not have to furnish these bonds.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 9 of 52

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 10 of 52

3.    The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4.    The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5.    All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6.    All costs taxed against the "insured" in the "suit".

7.    Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8.    Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E.    Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV. LIMITS OF INSURANCE

A.    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1.    "Insureds";

2.    Claims made or "suits" brought; or

3.    Persons or organizations making claims or bringing "suits".

B.    The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1.    Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2.    Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C.    The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D.    Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E.    If the applicable limits of "underlying insurance" have been:

1.    Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2.    Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F.    The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V. EXCLUSIONS

This insurance does not apply to:

### A. Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1. A watercraft while ashore on premises you own or rent; or

2. A watercraft you do not own that is:

   a. Less than 26 feet long; and

   b. Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### B. Asbestos

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

### C. Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. That the "insured" would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

   a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### D. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 11 of 52

### E. Damage to Property

"Property damage" to:

1. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3. Property loaned to you;

4. Personal property in the care, custody or control of the "insured";

5. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### F. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

### G. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### H. Electronic Chat Rooms or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

### I. Employer's Liability

"Bodily injury" to:

1. An "employee" of the "insured" arising out of and in the course of:

   a. Employment by the "insured"; or

   b. Performing duties related to the conduct of the "insured's" business; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1. Whether the "insured" may be liable as an employer or in any other capacity; and

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 12 of 52

EXHIBIT 1 TO COMPLAINT

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

1. To liability assumed by the "insured" under an "insured contract".

2. To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

J. **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. Refusal to employ;

2. Termination of employment;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies, acts or omissions; or

4. Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

K. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

M. **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1. Advertising, broadcasting, publishing or telecasting;

2. Designing or determining content of web-sites for others; or

3. An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VI - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

N. **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 13 of 52

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O. **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1. The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2. Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3. Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P. **Nuclear**

1. To any injury or damage:

   a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To any injury or damage resulting form the "hazardous properties" of "nuclear material", if:

   a. The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

   a. "Hazardous properties" include radioactive, toxic or explosive properties;

   b. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

   c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

   d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 14 of 52

EXHIBIT 1 TO COMPLAINT

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 15 of 52

e. "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f. "Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. Injury or damage includes all forms of radioactive contamination of property.

Q. **Other "Personal and Advertising Injury"**

1. "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2. "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3. "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4. Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5. "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages:

a. That the "insured" would have in the absence of the contract or agreement; or

b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6. "Personal and advertising injury" arising out of a breach of contract, except an implied contract use another's advertising idea in your "advertisement".

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

   b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (1) Any "insured"; or

      (2) Any person or organization for whom you may be legally responsible;

   d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

   e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

   f. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

   g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

   1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

   2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 16 of 52

EXHIBIT 1 TO COMPLAINT

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 17 of 52

3.   Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4.   Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5.   Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6.   Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

   a.   The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   b.   The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7.   Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

   a.   The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   b.   The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2.   Any loss, cost or expense arising out of any:

   a.   Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b.   Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S.   **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.   "Your product";

2.   "Your work"; or

3.   "Impaired property";

EXHIBIT 1 TO COMPLAINT

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**T. Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

**U. Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

**V. Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication.  This exclusion also applies to communications which are made or allegedly made in violation of the:

1.  Telephone Consumer Protection Act (TCPA) including any

    Amendment of or addition to such law; or

2.  The CAN-SPAM Act of 2003, including any amendment of

    Or addition to such law; or

3.  Any statute, ordinance or regulation, other than the TCPA

    Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**W. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

**VI. CONDITIONS**

**A. Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for,in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and intereston that amount of any judgment that does not exceed the applicable Limits of Insurance shown in theDeclarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

**B. Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us.  If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 18 of 52

EXHIBIT 1 TO COMPLAINT

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 19 of 52

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      d.   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

4.   No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

## G.  Inspection and Audit

1.   We will be permitted, but not obligated to inspect the "insured's" property and operations. Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

2.   We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

## H.  Legal Action Against Us

1.   No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

2.   You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

## I.  Maintenance of "Underlying Insurance"

During the "policy period", you agree:

1.   To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

2.   That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

3.   That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

4.   That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

5.   That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

## J.  Other Insurance

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to be excess of this policy.

## K.  Premium

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium. It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

## L.  Separation of "Insureds"

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1.   As if each Named Insured were the only Named Insured; and

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 20 of 52

EXHIBIT 1 TO COMPLAINT

2. Separately to each "insured" against whom claim is made or "suit" is brought.

M. **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N. **Transfer of Rights of Recovery Against Others to Us**

1. If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2. Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3. If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O. **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy. The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 21 of 33

**XII. DEFINITIONS**

A. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B. "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D. "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E. "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or independent contractor.

F. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 22 of 52

1.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

2.  Your fulfilling the terms of the contract or agreement.

I.  "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured

J.  "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1.  that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a.  preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3.  under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities

K.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

L.  "Loading or unloading" means the handling of property:

1.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2.  While it is in or on an aircraft, watercraft or "auto"; or

3.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M.  "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  Vehicles maintained for use solely on or next to premises you own or rent;

3.  Vehicles that travel on crawler treads;

4.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 23 of 52

     a.    Power cranes, shovels, loaders, diggers or drills; or

     b.    Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     a.    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     b.    Cherry pickers and similar devices used to raise or lower workers;

6.  Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

     a.    Equipment designed primarily for:

          i.    Snow removal;

          ii.    Road maintenance, but not construction or resurfacing; or

          iii.   Street cleaning;

     b.    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     c.    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O.  "Occurrence" means:

1.  With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2.  With respect to "personal and advertising injury", a covered offense.  All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P.  "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy.  "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q.  "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1.  False arrest, detention or imprisonment;

2.  Malicious prosecution;

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

EXHIBIT 1 TO COMPLAINT

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T. "Products-completed operations hazard":

1. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

a. Products that are still in your physical possession; or

b. Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

i. When all of the work called for in your contract has been completed

ii. When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

iii. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. Does not include "bodily injury" or "property damage" arising out of:

a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

b. The existence of tools, uninstalled equipment or abandoned or unused materials.

U. "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V. "Retained limit" means either of the following:

1. The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2. The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 24 of 52

X.   "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.   "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.   "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA.  "Your product":

1.   Means:

   a.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1)  You;

      (2)  Others trading under your name; or

      (3)  A person or organization whose business or assets you have acquired; and

   b.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

2.   Includes:

   a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   b.   The providing of or failure to provide warnings or instructions.

3.   Does not include vending machines or other property rented to or located for the use of others but not sold.

BB.  "Your work":

1.   Means:

   a.   Work or operations performed by you or on your behalf; and

   b.   Materials, parts or equipment furnished in connection with such work or operations

2.   Includes:

   a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   b.   The providing of or failure to provide warnings or instructions.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 25 of 52

EXHIBIT 1 TO COMPLAINT

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | 1 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**BANKERS STANDARD FIRE AND MARINE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**BANKERS STANDARD INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE INDEMNITY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE AMERICAN INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**PACIFIC EMPLOYERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President

**WESTCHESTER FIRE INSURANCE COMPANY**
1325 Avenue of the Americas, 19th Floor, New York, NY 10019

GEORGE D. MULLIGAN, Secretary

DENNIS A. CROSBY, JR., President

_____
Authorized Agent

CC-1K11e (02/06) Ptd. in U.S.A.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 26 of 52

EXHIBIT 1 TO COMPLAINT

# Claim Reporting Endorsement

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | 2 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 – 01/01/2009** | **01/01/2008** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

YOU must provide us with immediate written notice of any OCCURRENCE, claim, or SUIT involving:

a) any claim, either paid or reserved for fifty percent (50%) or more of the applicable INSURED'S RETAINED LIMIT;
b) spinal cord injury, including quadriplegia/paraplegia;
c) brain damage, including closed head injury;
d) fatality;
e) second or third degree burns over 50% of the body or involving facial scarring;
f) permanent loss of sense (hearing, sight, smell, taste, touch); or
g) major amputation (leg, arm, foot or hand).

All other terms and conditions of this policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 27 of 52

_____
Authorized Agent

EXHIBIT 1 TO COMPLAINT

## INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE ENDORSEMENT

| Named Insured<br>**Komatsu America Corp** | | | Endorsement Number<br>**3** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G23889353** | Policy Period<br>**01/01/2008 to 01/01/2009** | Effective Date of Endorsement<br>**01/01/2008** |
| Issued By (Name of Insurance Company)<br>**ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II, WHO IS AN INSURED, Section B.1.a.4 is deleted and replaced by the following:

(4) arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other medical practitioner employed or retained by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees." Any series of continuous, repeated or related acts will be treated as the occurrence of a single negligent professional healthcare service.

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a.  medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

b.  the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This insurance does not apply to any "bodily injury", "personal and advertising injury":

1.  Arising out of the actual or threatened abuse or molestation of any person, including but not limited to physical abuse, corporal punishment, sexual abuse, sexual molestation, or sexual misconduct by any "insured", any employee of an "insured", or anyone acting on behalf of an "insured"; or

2.  For which any "insured" may be held liable in causing or in failing to prevent such actual or threatened abuse or molestation.

    This policy does not provide for claims or "suits" seeking damages, including defense of same, for any person who actively participates in any act of sexual misconduct, sexual molestation or physical or mental abuse of any person.

All other terms and conditions of this policy remain unchanged.

ELECTRONICALLY FILED<br>7/10/2015 1:53 PM<br>2015-L-007047<br>PAGE 28 of 52

_____
Authorized Agent

CC1E15

EXHIBIT 1 TO COMPLAINT

# PROFESSIONAL SERVICES LIABILITY LIMITATION ENDORSEMENT – DESIGNATED SERVICES

| Named Insured<br>**Komatsu America Corp** | | | Endorsement Number<br>**4** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G23889353** | Policy Period<br>**01/01/2008 to 01/01/2009** | Effective Date of Endorsement<br>**01/01/2008** |
| Issued By (Name of Insurance Company)<br>**ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

Except to the extent coverage is available in the "underlying insurance" and for the full limits of liability shown therein, this insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of the providing of or failing to provide professional services as a (an) <u>Employed Lawyer</u> .

All other terms and conditions of the policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 29 of 52

Authorized Agent

EXHIBIT 1 TO COMPLAINT

# RETENTION MAINTENANCE ENDORSEMENT

| Named Insured **Komatsu America Corp** | | | Endorsement Number 5 |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G23889353** | Policy Period **01/01/2008 to 01/01/2009** | Effective Date of Endorsement **01/01/2008** |
| Issued By (Name of Insurance Company) **ACE Property And Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section IV. LIMITS OF INSURANCE** is amended as follows:

The part E. of Section IV., LIMITS OF INSURANCE, that relates to the reduction or exhaustion of the aggregate limits of liability under any "underlying insurance" by reason of losses paid thereunder, is deleted, and is replaced by the following:

If the aggregate limits of liability under any "underlying insurance" are reduced or exhausted solely by reason of losses paid thereunder arising out of "bodily injury," "personal and advertising injury," or "property damage" which takes place during our "policy period," then this policy shall:

1. In the event of reduction, pay the excess of the reduced underlying limit; but only for any excess above the applicable amount stated in the Declarations as the "self insured retention."
2. In the event of exhaustion continue in force as "underlying insurance," but only for any excess above the applicable amount stated in the Declarations as the "self insured retention."

Section III, DEFENSE AND SUPPLEMENTARY PAYMENTS, Part A is amended to read as follows:

1. With respect to any "occurrence" covered by the "underlying insurance" listed in the schedule of "underlying insurance" or any "other insurance" to which this policy applies, whether the aggregate limit of said "underlying or other insurance" is exhausted or not, we shall not be called upon to assume charge of the investigation, settlement or defense of any "suit" brought against the "insured," but we shall have the right and be given the opportunity to be associated in the defense and trial of any "suits" relative to any "occurrence" which, in our opinion, may create liability on the part of us under the terms of the policy.
2. With respect to any "occurrence" not covered by the "underlying insurance" or any "other insurance" but covered by the terms and conditions of this policy, we shall defend such "suit" against the "insured" seeking damages on account of "bodily injury," "personal and advertising injury," or "property damage" and we may make such investigation and effect settlement of any "suit" so defended. Provided, however, we shall have no obligation to defend until the "insured" losses have exceeded the "self insured retention" amount set out in the declarations of this policy.

Furthermore, we shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

**Section VII. DEFINITIONS,** is amended as follows:

The following Definition is added: "self insured retention":

"Self insured retention" means the amount referred to as such in the Declarations, which is the amount "you" will pay in the settlement of any claim or "suit" to which this policy applies, in circumstances where this policy applies in excess of the "self insured retention."

All other terms and conditions of this policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 30 of 52

_____
Authorized Agent
EXHIBIT 1 TO COMPLAINT

# POLICYHOLDER DISCLOSURE NOTICE
# OF TERRORISM INSURANCE COVERAGE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | 6 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property And Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

You should be aware that under the Terrorism Risk Insurance Act (the Act), any losses resulting from certified acts of terrorism under your existing coverage may be partially reimbursed by the United States Government under a formula established by federal law (applicability is subject to the terms and conditions of each individual policy). The Act was specifically designed to address the ability of businesses and individuals to obtain property and casualty insurance for terrorism and to protect consumers by addressing market disruptions and ensure the continued availability of terrorism coverage.

Under the terms of the Act, you may now have the right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: the term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Responsibility for Compensation under the Act is shared between insurance companies covered by the Act and the United States Government. Under the formula set forth in the Act, the United States Government pays 90% (85% in 2007) of covered terrorism losses exceeding the statutorily established deductible, which is paid by the insurance company providing the coverage.

We are providing you with the terrorism coverage required by the Act. The premium for the coverage is set forth below.

Terrorism Risk Insurance Act premium: $15,450

_____
Authorized Agent

TRIA11a (2/06)

ELECTRONICALLY FILED 10/01/2015 01:36 PM

EXHIBIT 1 TO COMPLAINT

## POLLUTION EXCLUSION - COMBINATION EXCEPTION
## TIME ELEMENT AND NAMED PERIL

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | 7 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following

#### COMMERCIAL UMBRELLA LIABILITY POLICY

Item R. of Section V Exclusions is hereby deleted and replaced by the following:

This insurance does not apply:

1. To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2. To any "loss", cost or expense arising out of any:

    a. directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    b. claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 32 of 39

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

We shall have no duty to defend the "insured" against any claim or "suit" or proceeding arising out of or in any way related to pollution.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. is both unexpected and unintended from the standpoint of the "insured";

2. commenced abruptly and instantaneously and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3. is caused

    a. solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, sprinkler leakage, or collision or upset of a motor vehicle or an aircraft or arises out of "your product" included in the "products-completed operations hazard"; or

    b. by any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

EXHIBIT 1 TO COMPLAINT

(1) is at or from any

    a.   premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

    b.   premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

and

(2) is known by any "insured" within <u>twenty (20)</u> of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

(3) is reported to us within <u>eighty (80)</u> days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. "loss" of, damage to or "loss" of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, "loss" or damage to subsurface oil, gas or other substance;

2. any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind. Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not.

Waste means any substance that:

1. is left over, or no longer in use, or discarded;

2. is to be reclaimed or recycled, or reconditioned; or

3. has been removed, treated, stored or disposed of as part of any environmental remediation effort.

Explosion does not include:

1. waves caused by aircraft, generally known as "sonic booms";

2. electric arcing;

3. rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown;

4. water hammer;

5. rupture, bursting, breaking apart, collapse of pipes, tanks, vessels or containment areas;

6. operation of a pressure release device.

ELECTRONICALLY FILED<br>7/10/2015 1:53 PM<br>2015-L-007064<br>PAGE 33 of 56

_____

Authorized Agent

EXHIBIT 1 TO COMPLAINT

# AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION

| Named Insured | | Endorsement Number | |
|---|---|---|---|
| **Komatsu America Corp** | | **8** | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" included in the "products-completed operations hazard", and relating to, resulting from or arising out of "aircraft products" upon which you have performed "your work", or which were designed, manufactured, sold, handled, distributed, or disposed of by you, or by another trading under your name, in whole or in part, when such "aircraft products" are used in or on, or attached to any aircraft or missile or any component part or sub-assembly thereof, or in connection with the use of aircraft.

"Aircraft products" means:

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 84 of 52

1. Aircraft (including missiles, spacecrafts, or satellites and any ground support, maintenance or control equipment used therewith or any component part or sub-assembly thereof);

2. Any article furnished by an insured and installed in aircraft or used in connection with aircraft or for space parts for aircraft;

3. Ground handling tools and equipment;

4. Training aids, instruction manuals, blueprints, maps and guides, engineering or other data, engineering or other advice and services and labor relating to such aircraft or articles described above.

This insurance does not apply to any damage of any kind whatsoever which arises out of "grounding liability."

"Grounding liability" means liability for the withdrawal or grounding of aircraft from flight operations, whether or not owned or operated by you, in the interests of safety, or for any other reason, whether or not such withdrawal or grounding was ordered by a governmental agency.

All other terms and conditions of the Policy remain unchanged.

Authorized Agent

EXHIBIT 1 TO COMPLAINT

# ANTI-STACKING ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | 9 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance is amended to include the following additional Condition:

If this insurance and any other insurance issued to the Named Insured by us or any of our affiliated companies applies to the same claim, "suit" or "occurrence", the maximum limit of insurance available for such claim, "suit" or "occurrence" will not exceed the highest applicable limit of insurance available under any one policy. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically issued to apply as excess insurance over the limits of this policy.

All other terms and conditions of this policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 35 of 52

Authorized Agent

EXHIBIT 1 TO COMPLAINT

## NON-CONCURRENCY ENDORSEMENT
### (Does not Recognizes Non-Concurrency)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | 10 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Whenever the "policy period" of any scheduled "underlying insurance" is non-concurrent with the "policy period" of this policy, notwithstanding anything contained in this policy to the contrary, it is hereby understood and agreed that:

1. there shall be no liability under this policy for any "occurrence" which commenced or first took place prior to the inception date of this policy; and

2. the Limits of Insurance under the schedule of "underlying insurance" shall not be deemed eroded or exhausted by any payments for "occurrences" which commenced or first took place prior to the inception date of this policy, and shall be deemed reduced or exhausted only by payment of covered losses or expenses in connection with "occurrences" which occur solely during the period of this policy; and

3. wherever reference is made herein to the schedule of "underlying insurance" the words including "any renewal thereof" shall be deemed to be appended immediately thereafter.

"Policy period" means the period stated in the declarations of this policy.

All other terms and conditions of this policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 36 of 52

_____
Authorized Agent

XS-20754 (08/06)

EXHIBIT 1 TO COMPLAINT

## LOSSES FROM CERTIFIED ACTS OF TERORISM
## ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | **11** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

A. With respect to any one or more "Certified Acts of Terrorism", we will not pay any amounts for which we are not responsible under the terms of the Federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act including any amendments thereto due to the application of any clause which results in a cap or our liability for payments for terrorism losses.

B. The following definitions are added to Section VII - DEFINITIONS:

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 37 of 52

    1. "Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the Federal Terrorism Risk Insurance Act of 2002. The Federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

        a. The act resulted in aggregate losses in excess of $5 million; and

        b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

    2. "Other Act of Terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that is or appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the Federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph b. of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. Solely with respect to any "occurrence" resulting in any "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of a "certified act of terrorism" or "other act of terrorism", which is covered by this policy, but not covered by the "underlying insurance" or any other insurance providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance,

    1. The "insured's retained limit" in the Limits of Insurance section of the Declarations is hereby deleted and replaced by the following:

        "Insured's retained limit" $ 2,000,000;

    2. The definition of "insured's retained limit" is amended to read as follows:

        "Insured's retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out of a "certified

XS-20771 (08/06)

EXHIBIT 1 TO COMPLAINT

act of terrorism" or "other act of terrorism", which is covered by this policy, but not covered by the "underlying insurance" or any other insurance providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance. "Insured's retained limit" does not include any costs of investigation, settlement or defense, and such costs shall not erode the "insured's retained limit".

D. Solely with respect to this endorsement, Paragraphs A. and C. of Section III DEFENSE AND SUPPLEMENTARY PAYMENTS are deleted and replaced by the following:

With respect to any "occurrence" to which this policy applies and no "underlying insurance" or other insurance applies, due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of a "certified act of terrorism" or "other act of terrorism". However, we shall have the right and be give the opportunity to be associated in the defense and trial of any such "suit" relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this policy.

We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense, have exceeded the, "insured's retained limit". Once such losses have exceeded the "insured's retained limit", we will assume charge of the settlement or defense of any such "suit". We may make such investigation as we require and effect settlement of any "suit" so defended.

We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

All other terms and conditions of the policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 38 of 52

Authorized Agent

XS-20771 (08/06)

Page 2 of 2

EXHIBIT 1 TO COMPLAINT

# FUNGI OR BACTERIA EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | 12 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or in any way related to the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to "bodily injury", "property damage" or "personal and advertising injury".

"Fungi" means any type or form of fungus, mold, mildew, mycotoxins, spores, or scents or by-products produced or released by "fungi", but does not include any "fungi" intended by the "insured" for human consumption.

All other terms and conditions of the policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 39 of 52

_____
Authorized Agent

EXHIBIT 1 TO COMPLAINT

# CROSS SUITS EXCLUSION

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **Komatsu America Corp** | | | 13 | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement | |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** | |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property And Casualty Insurance Company** | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of any claim or "suit" by one Named Insured against another Named Insured.

All other terms and conditions of the policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 40 of 52

_____
Authorized Agent

XS-20796 (08/06)

Page 1 of 1

EXHIBIT 1 TO COMPLAINT

## DESIGNATED PERSON OR ORGANIZATION EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | **14** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of the premises, operations, products or activities of any person or organization shown in the following Schedule:

### SCHEDULE

Advanced Silicon Materials LLC (ASIMI)

Solar Grade Silicon (SGS)

Cummins Engine Company

Ismac, Inc.

Daika Corporation

Road Machinery Company

Furnival Machinery Company

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 41 of 52

All other terms and conditions of the policy remain unchanged.

_____

Authorized Agent

XS-20797 (08/06)

Page 1 of 1

EXHIBIT 1 TO COMPLAINT

## FIDUCIARY LIABLITY EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | 15 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of operations conducted by or on behalf of the "insured" in a "fiduciary" capacity or properties over which the "insured" exercises control in a "fiduciary" capacity.

"Fiduciary" means relating to or involving a confidence or trust, including but not limited to acting as an administrator, executor, trustee under a will or trust agreement, guardian, custodian, mortgage servicing agent, escrow agent or other similar trust or representative capacity.

All terms and conditions of the policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007067
PAGE 42 of

_____
Authorized Agent

XS-20807 (08/06)                                                                 Page 1 of 1

EXHIBIT 1 TO COMPLAINT

# FINANCIAL INSTITUTIONS EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | **16** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. Operations or properties over which the "insured" exercises control in a "fiduciary" capacity;

2. The ownership, operation, maintenance or use of any property in which the "insured" holds a security or financial interest because of loans made in connection therewith;

3. Injury to or destruction of any real or personal property held by, deposited with, entrusted to, or otherwise in the care, custody or control of the "insured";

4. Any actual or alleged breach of duty, negligent act, error, omission or neglect in performing or failing to perform professional services for others by or on behalf of the "insured", including but not limited to:

   a. Providing financial, economic, or investment advice or advisory or management services;

   b. Acting as an insurance agent, insurance broker, or general insurance agent;

   c. Acting as a mortgagee, mortgage servicing agent, or "fiduciary" with regard to deeds of trust or mortgages;

   d. Acting as an escrow company or escrow agent;

   e. Electronic data processing; or

   f. Administering estates or trusts or managing real or personal property of others.

5. Failure to comply with the following:

   a. Section 130, Civil Liberty, of Title 1 (Truth in Lending Act) of the Consumer Protection Act (Public Law 90-321:82 Stat 146 ET Seq);

   b. The Financial Institution Reform, Recovery, and Enforcement Act of 1989 (FIRREA), including any amendments or revisions thereto, or any similar state or federal statute, law, regulation or order issued pursuant to the foregoing.

   c. The provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, including any amendments or revisions thereto, or any similar state or federal statute, law, regulation or order issued pursuant to any of the foregoing.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 43 of 52

XS-20809 (08/06)                                    Page 1 of 2

EXHIBIT 1 TO COMPLAINT

d.  The Sarbanes-Oxley Act of 2002 (Pub. L. No. 107-204, 116 Stat. 745), also known as the Public Company Accounting Reform and Investor Protection Act of 2002, including any amendments or revisions thereto, or any similar state or federal statute, law, regulation or order issued pursuant to any of the foregoing.

e.  The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56) commonly known as the USA PATRIOT Act, including any amendments or revisions thereto, or any similar state or federal statute, law, regulation or order issued pursuant to any of the foregoing.

f.  Rules, regulations and economic and trade sanctions administered or enforced by the Office of Foreign Assets Control ("OFAC") of the US Department of the Treasury.

"Fiduciary" means any operation conducted by or on behalf of the "insured" relating to or involving a confidence or trust, including but not limited to acting as an administrator, executor, trustee under will or trust agreement, guardian, custodian, mortgage servicing agent, escrow agent or other similar trust or representative capacity.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 44 of 52

_____

Authorized Agent

EXHIBIT 1 TO COMPLAINT

## PROFESSIONAL SERVICES LIABILITY EXCLUSION - ABSOLUTE

| Named Insured **Komatsu America Corp** | | | Endorsement Number 17 |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G23889353** | Policy Period **01/01/2008 - 01/01/2009** | Effective Date of Endorsement **01/01/2008** |
| Issued By (Name of Insurance Company) **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of the providing of or failing to provide any services of a professional nature.

All other terms and conditions of the policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 45 of 52

Authorized Agent

EXHIBIT 1 TO COMPLAINT

## UNIMPAIRED AGGREGATE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Komatsu America Corp** | | | 18 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G23889353** | **01/01/2008 - 01/01/2009** | **01/01/2008** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property And Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

##### COMMERCIAL UMBRELLA LIABILITY POLICY

The Limits of Insurance of this policy shall not apply in excess of any reduced or exhausted underlying aggregate limit of liability to the extent that such reduction or exhaustion is the result of any injury, damage, expense, cost, "loss", liability or legal obligation which is not covered by this policy.

All other terms and conditions of the policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 46 of 52

_____

Authorized Agent

EXHIBIT 1 TO COMPLAINT

## CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured **Komatsu America Corp** | | | Endorsement Number **19** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G23889353** | Policy Period **01/01/2008 – 01/01/2009** | Effective Date of Endorsement **01/01/2008** |
| Issued By (Name of Insurance Company) **ACE Property & Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

    $250,000 Annual Limit

Catastrophe Management Coverage

A. Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

B. A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

C. There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

D. Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

E. Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

F. For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 58 of 52

(3) a need for "catastrophe management services" due to "adverse media coverage". "Catastrophe management event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1.  expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2.  expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3.  medical expenses; funeral expenses; expenses for psychological counseling; travel expenses; temporary living expenses or other necessary response costs and approved by us, incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured". A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 60 of 62

_____
Authorized Agent



**ACE Producer Compensation**
**Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 49 of 52

ALL-20887 (10/06)

EXHIBIT 1 TO COMPLAINT

## COMMERCIAL UMBRELLA LIABILITY
## INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully. When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.
- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

## 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.
- Please be prepared to provide the following information:
  - o Caller's name, title and contact telephone number
  - o Name of Insured
  - o Policy Number
  - o A description of the incident
  - o Any witnesses
  - o Property, Product or Vehicle Information
  - o Incident Location
  - o Contact Person
  - o Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - o Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty Insurance Company or one of its insurance company affiliates.*

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 50 of 52

XS 22552   (06/2007)

EXHIBIT 1 TO COMPLAINT



# ACE USA SPECIALTY CLAIMS LOSS NOTIFICATION FORM

FORWARD BY FAX, MAIL OR E-MAILTO:

ACE USA Specialty Claims
140 Broadway, 40th Floor
New York, NY 10005
Fax No.: (646) 458 - 5933

CasualtyRiskExcessFirstNotice@ace-ina.com

**Today's Date: 8 January 2008**

## Notice of:  (check all that apply)

☐ First-Party Claim          ☐ Potential Claim

☐ Third-Party Claim          ☐ Litigation Initiated

☐ Other_____

## Insured's Name & Contact Information

Company Name: Komatsu America Corp                Point of Contact: _____

Address:        One Continental Tower
                1701 W. Golf Rd.
                Rolling Meadows, IL 60008

Phone Number: _____

## Broker/Agent's Name & Contact Information

Company Name: AON RISK SERVICES INC OF ILLINOIS        Point of Contact:  Christopher Sullivan

Address:        200 E RANDOLPH 11TH FLOOR
                CHICAGO, IL 60601

Phone Number: _____

## Policy Information

Policy Number:  XOO G23889353                Policy Period:  01/01/2008 - 01/01/2009

Limits of Liability:  25,000,000    per  25,000,000    agg    Self-Insured Retention/Deductible:  2,000,000.00

## Loss Information

Date of Incident/Claim: _____    Location: _____

Claimant Name/Address: _____

Description of Loss: _____

_____

_____

_____

Please list all attached or enclosed documentation:    ☐  (check if none provided)

_____

_____

Name of Person Completing This Form: _____    Signature: _____

Form Version: May 2007

EXHIBIT 1 TO COMPLAINT

ELECTRONICALLY FILED
1/10/2015 4:53 PM
2015-L-000704
PAGE 5 of 5

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

ELECTRONICALLY FILED
7/10/2015 1:53 PM
2015-L-007047
PAGE 63 of 63

IL P 001 01 04 © ISO Properties, Inc., 2004 **Page 1 of 1**

EXHIBIT 1 TO COMPLAINT